

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 13, 2019

**BY ECF**

The Honorable Valerie Caproni
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

  Re: **United States v. Vincent Perretti**, 18 Cr. 164 (VEC)

Dear Judge Castel:

  The Government respectfully submits this letter in advance of sentencing in this matter, currently scheduled for Thursday, August 22, 2019 at 4:00 p.m. The applicable Sentencing Guidelines ("U.S.S.G." or the "Guidelines") range is 24 to 30 months' imprisonment. For the reasons explained below, the Government submits that a sentence within the Guidelines range is appropriate in this case.

**A. Factual Background**

  While working as a fishmonger at the Fulton Fish Market, Vincent Perretti, the defendant, conspired with another employee ("CC-1") to steal over $900,000 from their employer, Lockwood & Winant. The fraudulent scheme was no one-time lapse in judgment—Perretti kept up the scheme for over two years, slowly depleting the company's bank account of nearly $1 million with monthly withdrawals designed to avoid detection. He then spent the money on luxuries like vacations to the Bahamas and jewelry.

  To carry out the scheme, Perretti and CC-1 created a fake entry in Lockwood's accounting database for a vendor named "FreghtCo." They then submitted fake invoices for fish deliveries that never happened. To avoid detection by Lockwood's accounting system, the invoices were not entered on the date of the purported fish deliveries (which would have been detected by the company's daily audits), but on a later date. Lockwood then issued checks based on the fake invoices, which Perretti deposited into a corporate account that he controlled.

  In total, approximately 57 checks totaling $892,480.78 were issued to FreghtCo. Another check for $10,217.15, made out to a different company, was also stolen from Lockwood and deposited into Perretti's corporate account, bringing the total loss to $902,697.93. After Perretti deposited the money into his account, he transferred a portion of the stolen funds to CC-1, but kept the majority of the money to fund his own lifestyle, including payments toward his car loan and

over $230,000 toward his American Express bills. An analysis of bank records showed that Perretti received $520,958.64 of the stolen money, and CC-1 received $325,829.

Perretti's former employer, Lockwood & Winant, has submitted a victim impact statement, attached hereto as Exhibit A. In that statement, Lockwood's owner describes how he gave Perretti a job when Perretti's fish business was failing, how he trusted Perretti, and how Perretti's fraud affected the company:

> When I learned of his activities, my initial reaction was shock followed by deep dismay. It was unimaginable to me that a person I'd known for so long and trusted could be capable of such a deception. When it became apparent that almost $1,000,000 was missing from our accounts, the pile of evidence grew, and Mr. Peretti was arrested at the market and removed in handcuffs, I was forced to accept that he was not the person I believed him to be.
>
> The actions of Vincent Peretti endangered my business and the livelihoods of all his colleagues, who he worked with every day and who he'd known for years. Additionally, the many months of investigations, disruptive and extensive audits of our books, and understandably low-morale among the Lockwood crew are all a direct result of Mr. Peretti's actions.

Ex. A at 1.

### B. The Plea and Guidelines Calculation

On November 20, 2017, the defendant was charged by complaint with bank fraud and conspiracy to commit bank fraud. On February 26, 2018, the defendant was indicted in a two-count indictment carrying the same two charges. On March 21, 2019, the defendant pled guilty to a superseding information charging him with one count of conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 371.

The plea was pursuant to a plea agreement. As set forth in that plea agreement, the base offense level was 6, pursuant to U.S.S.G. § 2B1.1(a)(2). Because the loss amount was more than $550,000 but less than $1,500,000, the offense level was increased by 14, pursuant to U.S.S.G. § 2B1.1(b)(1)(H). Assuming a three-level reduction based on the defendant's acceptance of responsibility, the total offense level is 17. With a criminal history category of I, the applicable Guidelines range is 24 to 30 months' imprisonment.

The Probation Office agrees with this Guidelines calculation and is recommending a below-Guidelines sentence of one year and one day's imprisonment. The Government believes that a Guidelines sentence is appropriate.

### C. Discussion

#### 1. Applicable Law

As the Court is well aware, the Sentencing Guidelines still provide strong guidance to sentencing courts following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v.

*Crosby*, 397 F.3d 103 (2d Cir. 2005).  Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall* v. *United States*, 128 S. Ct. 586, 594 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings.  *Id.* at 596.  After that calculation, however, the Court must consider the seven factors outlined in Title 18, United States Code, Section 3553(a), which include the nature and circumstances of the offense, the individual characteristics of the defendant, and the need to adequately deter criminal conduct and promote respect for the law.  *Id.* & n.6.  Those factors warrant a Guidelines sentence in this case.

### 2. A Guidelines Sentence Is Warranted in This Case

A Guidelines sentence is necessary here to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence to this defendant and other similarly situated individuals, and to protect the public from further crimes of the defendant.  *See* 18 U.S.C. § 3553(a)(2)(A)-(C).

*First*, a Guidelines sentence would appropriately reflect the nature and seriousness of the defendant's conduct.  The defendant stole over $900,000 worth of checks.  Without him, the fraud could not have happened—the fake invoices were made out to the defendant's company, the defendant deposited the checks into his corporate bank account, and the defendant then divvied up the proceeds between himself and CC-1, keeping the biggest cut for himself.  He committed this fraud over the course of two years, sometimes submitting multiple fake invoices a month, all while pretending to be a dutiful employee.  As the victim impact statement makes clear, Perretti took advantage of the trust his employer placed in him and used it to steal an extraordinary sum of money.  His actions had real consequences for his employer and his fellow employees.

The defendant's motivation appears to have been pure greed.  He used the stolen money to fund a lifestyle that was apparently beyond his legitimate means and included a three-story townhouse, expensive vacations, a car, and jewelry.

*Second*, a sentence within the Guidelines range is necessary to afford adequate deterrence to the defendant and others similarly situated.  When his fraud was discovered, the defendant's first reaction was not to accept responsibility and make amends, but to fight back.  He alleged that *he* was the real victim, and he filed suit against the Business Integrity Commission[1] for denying him continued access to the Fulton Fish Market.  In that lawsuit—which got coverage in the New York Post—Perretti defamed his victim, claiming that the criminal charges against him were part of his former boss's "continuing vendetta against Mr. Perretti."  *See* Kathianne Boniello, "Local Fishmonger Claims Restaurateur is Trying to Ruin His Career," NY Post (July 15, 2017), *available at* https://nypost.com/2017/07/15/local-fishmonger-claims-restaurateur-is-trying-to-ruin-his-career/.  While we are pleased to see that the defendant has finally decided to accept responsibility for his crimes and pay restitution to his victim, a substantial term of incarceration is necessary to

---

[1] The City of New York Business Integrity Commission is a law enforcement agency tasked with eliminate organized crime and other forms of corruption and criminality from the industries it regulates.  The Fulton Fish Market is one of those industries.

make clear to the defendant—and others similarly situated—that if you are caught committing a financial crime, you will face more consequences that just paying back the money you stole. This message is particularly necessary in fraud crimes, which are by their nature difficult to detect. A Guidelines sentence of 24 to 30 months' imprisonment would show the defendant and others similarly situated that fraud crimes carry the risk of serious punishment.

In sum, a sentence within the Guidelines range would adequately balance the various considerations under § 3553(a) and achieve the statute's stated objectives.

**D.  Conclusion**

For the reasons set forth above, the Government respectfully submits that a sentence within the applicable Guidelines range of 24 to 30 months' imprisonment would be fair and appropriate in this case.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By:  *Adam S. Hobson*
Adam S. Hobson
Assistant United States Attorney
(212) 637-2484

cc:     Eric Breslin, Esq. (by ECF)